1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAURA E. DUFFY
United States Attorney
HELEN H. HONG, CA 235635
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-6990
Email: helen.hong@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | Case No. 09-CR-710-JLS |
|---|---|
| v. <br><br> MAURICIO MENDEZ, <br><br> Defendant. | UNITED STATES' RESPONSE AND OP-POSITION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 <br><br> AND MOTION TO STAY PROCEEDINGS UNTIL THE RESOLUTION OF *UNITED STATES v. BEGAY, C.A. NO. 14-10080* |

**I**

**BACKGROUND**

Fifteen associates of the Mexican Mafia were indicted in 2009, for engaging in a pattern of racketeering activity in violation of 18 U.S.C. § 1962d. The defendants, including Mendez, were alleged to have participated in the activities of the Mexican Mafia Prison Gang, an organization known for its "highly violent" activities. See Indictment ¶¶ 1, 6. Mendez and his associates acted to control drug trafficking activities in federal prisons, jails and within Southern California, and to tax any drug traffickers and street gangs operating in Mexican Mafia territory. *Id*. ¶ 14. As a result, Mendez was charged with a conspiracy to violate RICO, VICAR counts for kidnapping, kidnapping, Hobbs Act robbery a conspiracy to distribute methamphetamine, and distribution of methamphetamine.

Mendez ultimately pled guilty to a two-count superseding information, charging him with just a conspiracy to commit a RICO violation, in violation of 18 U.S.C. § 1962d,

and one count of brandishing a firearm in furtherance of a "drug trafficking crime and a crime of violence." See Superseding Information, Count 2. Mendez admitted that he conspired with other Mexican Mafia members to commit robbery, kidnapping, and extortion, and to distribute methamphetamine and commit federal violations of 18 U.S.C. § 1951 (robbery and extortion). Plea Agmt. § I. Specifically, Mendez admitted that he was a "leader" in the Mexican Mafia, and that he had participated in the robbery of a residence in Coronado in order to collect a drug debt. Plea Agmt. § II.B.1-5. Mendez brandished a firearm during that robbery to prevent occupants from fleeing and threatened them with injury or death if they did not pay $54,000. Mendez and his associated left with 4 vehicles, $2000 in cash, watches, jewelry, watches and 2 computers. *Id.*

Mendez agreed to recommend a 27-year term of imprisonment: 20 years for Count 1, consecutive to the 7 years required for Count 2. Plea Agmt. § X.F. He also agreed to waive "to the full extent of the law, any right to appeal or to collaterally attack the conviction and sentence[.]" Plea Agmt. § XI. In exchange, the United States agreed to dismiss all of the other pending charges and the District Attorney's office agreed to dismiss all of their pending charges, as well. Plea Agmt. § I. In accordance with the plea, this Court imposed judgment on December 6, 2010, sentencing Mendez to 234 months on Count 1 to run consecutive to 84 months on Count 2, for a total of 318 months. Mendez did not appeal that sentence or file any earlier 28 U.S.C. § 2255 petitions.

Mendez now breaches his plea and collaterally attacks his 924(c) sentence. He cites *Johnson v. United States*, 135 S. Ct. 2551 (2015), which voided as vague the residual clause in the "violent felony" definition of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). But Mendez was not prosecuted under ACCA, and nothing in his case relied on ACCA's residual clause. *Johnson* does not apply here. That is just one of several reasons—he also waived his right to collateral attack; he procedurally defaulted his claim by not raising it on direct appeal; he seeks to extend *Johnson* to a scenario that he cannot show applies here; and at least one predicate crime underlying his 924(c) offense remains a "crime of violence" after *Johnson*—that Mendez's motion should be rejected.

2

# II

# ARGUMENT

## A. MENDEZ'S MOTION SHOULD BE DISMISSED OR DENIED

A prisoner may seek to vacate, set aside or correct his sentence under 28 U.S.C. § 2255(a) on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

*Johnson* examined language from ACCA, which provides for a mandatory minimum sentence of 15 years of imprisonment for a defendant who violates 18 U.S.C. § 922(g) and has three prior convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e). Three "clauses" in that statute define "violent felony":

- The "elements" clause: "has as an element the use, attempted use, or threatened use of physical force against the person of another";

- The "enumerated offenses" clause: "is burglary, arson, or extortion, [or] involves use of explosives"; and

- The "residual" clause: "or otherwise involves conduct that presents a serious potential risk of physical injury to another."

18 U.S.C. § 924(e)(2)(B). *Johnson* voided ACCA's residual clause, only, as unconstitutionally vague. Because no "principled and objective standard" could identify what crimes fell under the language of the residual clause, the clause "both denies fair notice to defendants and invites arbitrary enforcement by judges." 135 S. Ct. at 2557. In so doing, the Court overruled *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 564 U.S. 1 (2011), which previously rejected vagueness challenges to the clause. 135 S. Ct. at 2563. The Court said its decision "does not call into question application of [ACCA] to … the remainder of the Act's definition of a violent felony," including a felony offense

that "has as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i).

Mendez was not prosecuted under ACCA. He was prosecuted under section 924(c). That statute provides for a mandatory consecutive sentence of seven years if a defendant "during and in relation to any crime of violence or drug trafficking crime … for which the person may be prosecuted in a court of the United States," brandishes a firearm. 18 U.S.C. § 924(c).

Section 924(c) defines "crime of violence" differently than "violent felony" in ACCA. A crime of violence under 18 U.S.C. § 924(c)(3) means an offense that is a felony and—

(A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)   that by its nature, involves a substantial risk that physical force   against   the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

1.   *Mendez Waived His Right to Collaterally Attack His Sentence*

Mendez's motion fails first, and should be dismissed, because he waived his right even to bring it. The right to collaterally attack a sentence is a statutory right that a defendant may waive. *United States v. Abarca*, 985 F.2d 1012 (9th Cir. 1993); see also *Hurlow v. United States*, 726 F.3d 958, 965 (7th Cir. 2013) (voluntary collateral review waivers are enforceable as a general rule); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999) ("[A] defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief."). "The waiver is enforceable if appellant knowingly and voluntarily waives [his] rights and the language of the waiver covers the grounds raised" in a habeas petition. *United States v. Bibler*, 495 F.3d 621, 623-24 (9th Cir. 2007).

Mendez's waiver provision in his Plea Agreement plainly covers this motion for § 2255 relief: he "waive[d] any right to appeal or collaterally attack the conviction and

4

sentence," without exception. Plea Agreement §XI (attached to Mendez's motion as Exhibit B). The defense is fully aware of the waiver; they attached it to their motion. Mendez's motion, though, does not claim his waiver was unknowing, involuntary, or is unenforceable, which forecloses any argument otherwise. Cf. *United States v. Nunez*, 223 F.3d 956, 958-59 (9th Cir. 2000) (defendant "failed to raise" whether he "knowingly and voluntarily consent[ed] to" the appellate waiver "in his opening brief in this court, and it is therefore waived"). His motion should be dismissed.

2.      *Mendez Procedurally Defaulted His Challenge to Section 924(c)(3)(B)*

Alternatively, Mendez's motion should be denied as procedurally barred, because he procedurally defaulted by not appealing for any reason, much less the reason he raises now. "The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising it on collateral review." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350-51 (2006). A defendant can overcome that bar only if he shows cause and prejudice for his procedural default, or actual innocence. See *id.* at 351; *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) ("A § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default."). Mendez cannot establish either exception here.

Cause is narrow. To show "cause," a defendant "must ordinarily … show that some factor external to the defense impeded counsel's efforts to comply with the … procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "The mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* at 486. The Court has found cause on collateral review only (1) where, in a state court proceeding, the claim was "novel," *Reed v. Ross*, 468 U.S. 1, 16 (1984), (2) where the defendant received ineffective assistance of counsel, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (ineffective assistance will excuse default "in certain circumstances"), or (3) where the defendant is actually innocent. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1932 (2013). These few exceptions

balance the interest in finality against the need to protect against a "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Mendez fails even to address his default, much less show any of the few exceptions applies here. None does. Adverse authority is inadequate to establish the type of "futility" that could excuse a procedural default. "[F]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted); *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982). Although *Johnson* overruled two prior decisions that rejected vagueness challenges to ACCA's residual clause, that adverse authority was not, standing alone, sufficient to establish cause.

That is because the argument in *Johnson* is not "novel" within the meaning of *Reed*. Despite *James* and *Sykes*, there were repeated hints from the Court that those holdings might be re-examined. Before *Johnson*, the Court struggled with the parameters of ACCA's residual clause on four occasions in a six-year span: *Begay v. United States*, 553 U.S. 137 (2008) (DUI: out); *Sykes v. United States*, 131 S. Ct. 2267 (2011) (vehicular flight: in); *Chambers v. United States*, 555 U.S. 122 (2009) (failure to report: out); *James v. United States*, 550 U.S. 192 (2007) (attempted burglary: in). Justice Scalia repeatedly urged the Court to "grant certiorari, declare ACCA's residual provision to be unconstitutionally vague, and bring down the curtain on the ACCA farce playing in federal courts throughout the Nation." *Derby v. United States*, 131 S. Ct. 2858, 2860 (2011) (dissenting from the denial of certiorari). Other Justices made a similar point in urging a congressional fix. *Chambers*, 555 U.S. at 133 (Alito, J., concurring in the judgment, joined by Thomas, J.) ("ACCA's residual clause is nearly impossible to apply consistently. [T]he only tenable, long-term solution is for Congress to formulate a specific list of expressly defined crimes that are deemed to be worthy of ACCA's sentencing enhancement.").

The signs were there for an attorney to challenge the residual clause on vagueness grounds. In fact, in *Johnson* itself, the petitioner had argued that the clause was unconstitutionally vague in the Eighth Circuit, preserving the issue and positioning himself to ben-

efit from a favorable Supreme Court ruling. *United States v. Johnson*, 526 F. App'x. 708, 711-12 (8th Cir. 2013) (unpublished) (rejecting Johnson's vagueness challenge). Mendez did not do so. Instead, he opted to lock in a favorable plea resolution, giving up all possible challenges including an attack on the crime of violence definition in section 924(c)(3) as unconstitutionally vague.

Nor can Mendez establish ineffective assistance of counsel in failing to raise a *Johnson* claim. Failing to anticipate or secure a change in the law is not deficient performance. See *Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (failure to anticipate a court's willingness to reconsider precedent is not deficient performance); *Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001) (failure to raise a weak issue on appeal did not constitute ineffective assistance of counsel); see also *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) ("[A] lawyer cannot be required to anticipate our decision in this later case, because his conduct must be evaluated for purposes of the performance standard of *Strickland* "as of the time of counsel's conduct.").

Finally, for reasons below, Mendez cannot establish actual innocence or the actual prejudice side of cause and prejudice. *Sanchez-Llamas*, 548 U.S. at 351. Mendez's motion should be denied.

3.   *The Court Should Stay This Case While the Ninth Circuit Consider the* Johnson *Challenge Raised Here*

Mendez's motion also fails on its merits for any of several reasons below. But before reaching the merits, we move to stay this case. The main issue around which Mendez's motion revolves—whether *Johnson* invalidates the residual clause in section 924(c)(3)(B)—is already under submission to the court of appeals in *United States v. Begay*, C.A. No. 14-10080, among other cases. The Ninth Circuit itself has suggested that a "district court may wish to stay proceedings pending" *Begay*. See, e.g., *Simpson v. United States*, No. 16-70442 (docket entry number 5).

That is for good reason. A "District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706

(1997). The Supreme Court has upheld a district court's authority to stay proceedings *sua sponte* pending a dispositive ruling from another tribunal. *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 30-31 (1959). Nor is there any question that district courts have authority to issue stays in habeas corpus proceedings. *Rhines v. Weber*, 544 U.S. 269, 276 (2005). The qualification is courts cannot issue "an indefinite stay." *Ryan v. Gonzales*, 133 S. Ct. 696, 709 (2013). We recommend a 60-day stay as *Begay* has been under submission for almost five months and ought to be decided soon.

       4.     *Mendez Has Not Carried His Burden of Proving He Was Convicted Under the Residual Clause in 924(c)(3)(B)*

If the court opts not to stay, Mendez's motion should be denied, for any of several reasons. One is he relies on *Johnson* to attack the residual clause in 924(c)(3)(B). Mendez, though, has not shown his 924(c) conviction depended on that clause. Mendez is the habeas movant, so it is his burden to show he is entitled to relief. *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015) ("In making [the] determination [whether the district court correctly denied the § 2255 motion], we note that [the movant] bears the burden to prove the claims in his § 2255 motion."); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010) ("[T]he district court must determine whether the [§ 2255 movant] has met his burden of showing that his sentence is unlawful on one of the specified grounds."). Mendez has not cited, and cannot cite, any instance in the record where the residual clause in 924(c)(3)(B) was even mentioned (it never was).

Mendez's inability to show his 924(c) conviction depended on the residual clause—i.e., to show that he pleaded guilty to and was convicted of brandishing a firearm during and in relation to a crime of violence on the premise that his offense is one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," 18 U.S.C. § 924(c)(3)(B)—fails his burden of proof and fatally defeats his motion from the start. See, e.g., *In re Moore*, No. 16-13993-J, 2016 WL 4010433, at *4 (11th Cir. July 27, 2016) (per curiam) (stating in dicta "that movant cannot meet that burden [of proof under section 2255] unless he

proves that he was sentenced using the residual clause and that the use of that clause made a difference in the sentence. If the district court cannot determine whether the residual clause was used in sentencing and affected the final sentence—if the court cannot tell one way or the other—the district court must deny the § 2255 motion. It must do so because the movant will have failed to carry his burden of showing all that is necessary to warrant § 2255 relief."). But see *In re Chance*, No. 16-13918-J, 2016 WL 4123844, at *4 (11th Cir. Aug. 2, 2016) (arguing *In re Moore* is "wrong"). This Court never uttered the phrase "substantial risk" during the sentencing hearing, nor relied on § 924(c)(3)(B) to sentence Mendez, at all. Indeed, he was charged with and admitted that the § 924(c)(3)(B) offense occurred during and in relation to both a "drug trafficking offense" and a "crime of the violence." See Superseding Information, Count 2. The former, alone, is sufficient to sustain his conviction under § 924(c).

### 5. Johnson *Does Not Invalidate 924(c)(3)(B)'s Residual Clause*

Mendez's motion also fails because *Johnson* does not invalidate the residual clause in 924(c)(3)(B). *Johnson*'s reach is limited. Although *Johnson* held that ACCA's residual clause is too indeterminate to be fairly applied, the Supreme Court did not touch other laws containing similar "residual clause" language. Quite the opposite, the Court pointedly rejected the suggestion that its decision "invalidate[s] dozens of federal and state criminal laws [that like 924(c)(3)(B)] use terms like 'substantial risk,' 'grave risk,' and 'unreasonable risk[,]'": "Not at all." *Johnson*, 135 S. Ct. at 2561.[1]

#### a. *Mendez cannot demonstrate the statute is vague as applied to him*

Mendez must show that §924(c)(3)(B) is vague as-applied to him. When the Supreme Court decided *Johnson*, it did so against a backdrop of more than a century of precedent on the question of Constitutional vagueness. The uniform and "well established" rule that arose from this precedent requires that vagueness challenges "must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550

---

[1] For this reason (*Johnson* does not apply to 924(c)(3)(B)), Mendez's motion is barred by the one-year statute of limitations in 28 U.S.C. § 2255(f)(1). It was filed well past the January 2015 deadline for his habeas motion.

(1975) (citing *United States v. National Dairy Products Corp.*, 372 U.S. 29 (1963). Under this rubric, a "plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). This requirement flows from the Fifth Amendment itself. A person who challenges a statute on due process grounds seeks to vindicate his individual rights to receive "fair notice of what is prohibited" and to avoid "discriminatory enforcement." *Williams*, 553 U.S. at 304. As a result, where, as here, a defendant's vagueness challenge does not involve a First Amendment claim, this Court has made it clear that the challenge must be examined "as applied," in light of the facts of the case at hand. *United States v. Van Winrow*, 951 F.2d 1069, 1072 (9th Cir. 1991).

*Johnson* did not overturn this "as-applied" framework. Rather, the Court concluded that the specific statutory provision at issue in that case—the "residual clause" of the Armed Career Criminal Act (ACCA)—was void because it was "a black hole of confusion and uncertainty" that was "anything but evenhanded, predictable, or consistent." *Id*. at 2562-63. That is to say, the residual clause had no core. In reaching this conclusion, the Court rejected an argument from the dissent—that a provision cannot be facially vague "merely because there is some conduct that clearly falls within the provision's grasp." 135 S. Ct. at 2561. But the Court did not hold that *any* possibility of a vague application requires finding a statute void or waives a defendant's "well established" obligation to satisfy an as-applied challenge. *Mazurie*, 419 U.S. at 550.

*Johnson* never held that courts need not employ an "as applied" standard when judging other statutes that are not hopelessly vague on their face. To the contrary, the Supreme Court has long made it clear that for "statutes that by their terms . . . apply without question to certain activities, but whose application to other behavior is uncertain," the general rule is that a facial vagueness challenge is not available to one who is "a hard-core violator" of the statute. *Smith v. Goguen*, 415 U.S. 566, 577-78 (1974). This is because a facial vagueness challenge would not serve to vindicate the person's own rights, but only

10

the hypothetical rights of others. Permitting a facial vagueness claim to go forward in that context would run counter to the principle that federal courts have a "strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration." *Cnty. Court of Ulster Cnty. v. Allen*, 442 U.S. 140, 154 (1979)).

The law is clear, then, both before and after *Johnson*, that facial vagueness challenges are reserved for statutes that "simply ha[ve] no core," "in the sense that no standard of conduct is specified at all." *Smith*, 415 U.S. at 577-78 (citation and internal quotations omitted); see also *United States v. Bramer*, No. 15-3121, 2016 WL 4245502, at *1 (8th Cir. Aug. 11, 2016) (holding post-*Johnson* that "Though Bramer need not prove that § 922(g)(3) is vague in all its applications, our case law still requires him to show that the statute is vague as applied to his particular conduct.").

Section 924(c)(3)(B) is not a statute that "simply has no core." See *Leocal*, 543 U.S. at 10 (describing burglary as a "classic example" of a crime that satisfies § 16(b) because, "by its nature, [it] involves a substantial risk that the burglar will use force against a victim in completing the crime"). As a result, Mendez cannot invoke the hypothetical defendant against whom the residual clause could be vague. He must show that the statute is vague—meaning reasonable folks would have to guess if his offenses are covered by the language of the statute—as applied to him. A statute is not void for vagueness because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010).

Mendez never contends that the statute is vague as applied to him. Nor could he. His underlying crimes are *at* the core. It is hard to imagine offenses besides robbery, kidnaping, and extortion that can be more aptly described as involving a substantial risk that violent physical force against the person of another may be used during their commission. Indeed, Mendez and his conspirators prepared for that very probability, arming himself

11

and brandishing a firearm during the collection of a drug debt, where the victims were threatened with death. Because *Johnson* does not free Mendez from making an as-applied showing of vagueness, and Mendez has not even suggested the statute is void as applied to him, Mendez's motion should be denied.

### b.  *Mendez cannot demonstrate that § 924(c)(3)(B) is vague on its face*

Even if Mendez could ask this court to examine § 924(c)(3)(B) on its face, the language is not vague. *Johnson*'s reasoning illustrates why 924(c)(3)(B) remains constitutionally sound. *Johnson* examined the meaning of "violent felony" under ACCA, which is defined in part as a crime that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Court had previously construed the "residual clause" of that definition to require a court to determine whether the "ordinary case" of an offense presents the requisite risk of injury, as opposed to whether any defendant's particular conduct underlying the conviction actually entailed such risk. *Johnson*, 135 S. Ct. at 2557.

*Johnson* held that ACCA's residual clause was unconstitutionally vague because the "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* at 2556-57. "Two features of the residual clause conspire[d] to make it unconstitutionally vague." *Id.* First, the clause invited courts to evaluate the risk of injury that could occur with the "physical acts that make up the crime," as well as the risks of injury that could occur after the crime. *Id.* at 2557-58. "The inclusion of burglary and extortion among the enumerated offenses" confirmed that courts assessing risk had to go "beyond evaluating the chances that the physical acts that make up the crime will injure someone." *Id.* at 2557. That was because risk of injury could arise in a burglary after the breaking and entering had occurred, and an extortionist might become violent after making his demand. *Id.* But that post-conduct injury led to a "speculative" inquiry that is "detached from statutory elements" and could encompass injury "remote from the criminal act." *Id.* at 2559.

Second, ACCA's residual clause was unclear about the level of risk that would constitute a "serious potential risk of physical injury to another." That uncertainty did not arise from the language alone. The indeterminacy came from linking ACCA's enumerated crimes of "burglary, arson, extortion, or the use of explosives" to offenses that "*otherwise* involve[] conduct that presents a serious potential risk of physical injury." Because those four enumerated offenses are so different in the degree of risk that each poses, the Court concluded that the residual clause entails too much "indeterminacy about how much risk it takes for the crime to qualify as a violent felony." 135 S.Ct. at 2558, 2565.

The residual clause in 924(c)(3)(B) does not suffer from those same flaws. Unlike ACCA's residual clause that can look to risks of injury posed *after* an offense is committed, section 924(c)(3)(B) refers only to the risk that "physical force against the person or property of another may be used in the course of *committing the offense*." Section 924(c) thus lacks the textual feature that *Johnson* deemed "critical[]" to its conclusion that ACCA's residual clause is vague. 135 S.Ct. at 2557-58. And that is specifically a line that *Johnson* itself drew in distinguishing ACCA from these other statutes. *Id.* at 2061 ("More importantly, almost all of the cited laws require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion.").

And while ACCA required analysis of the degree of risk of physical injury (which required courts to look at post-crime consequences), § 924(c) looks to the risk that physical force may be used during the crime itself. In the Supreme Court's own words, that "simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense. The reckless disregard in § 16 relates not to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime." *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004). That is not an impossible task. "As a general matter," the Supreme Court has never doubted "the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct; 'the law is full of instances where a man's fate

depends on his estimating rightly ... some matter of degree,' *Nash v. United States*, 229 U.S. 373, 377, 33 S.Ct. 780, 57 L.Ed. 1232 (1913)." *Johnson*, 135 S.Ct. at 2061.

Significantly, too, the risk analysis in § 924(c) is not linked to a "confusing list of examples" like ACCA. *Johnson*, 135 S.Ct. at 2561. Because burglary, arson, extortion and use of explosives carry varying levels of risk of physical injury, identifying crimes under ACCA that "otherwise" pose the same type of risk sows confusion. By contrast, § 924(c) "does not complicate the level-of-risk inquiry by linking the 'substantial risk' standard, through the word otherwise, 'to a confusing list of examples.'" *United States v. Taylor*, 814 F.3d 340 (6th Cir. 2016) (rejecting *Johnson* challenge to § 924(c)).

Those textual differences are significant, as demonstrated by the statutes' divergent litigation histories. As *Johnson* explained, ACCA's residual clause spurred five separate Supreme Court cases in nine years about its meaning. ACCA's clause "created numerous splits among the lower federal courts," where it proved "nearly impossible to apply consistently." *Johnson*, 135 S.Ct. at 2560. It raised "pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider." *Id*. "Nine years' experience trying to derive meaning from the residual clause" convinced the Supreme Court that attempting to define ACCA's residual clause was "a failed enterprise." *Id*.

By contrast, there has not been a single opinion from the Supreme Court addressing indeterminacy claims for 924(c)(3)(B). In the only case where the Court considered language identical to the clause challenged here (in the 18 U.S.C. § 16(b) context), it had no difficulty in concluding that a crime did not pose a "risk that the use of physical force against another might be required in committing a crime." *Leocal*, 543 U.S. at 10. Circuit and district court opinions also reflect a striking void in challenges to the determinacy of 924(c)(3)(B). Indeed, a search for cases challenging that clause as void for vagueness be-

fore *Johnson* returned just five cases,[2] none of which actually addresses the indeterminacy of the language.[3] "It has been said that the life of the law is experience." *Johnson*, 135 S.Ct. at 2560. Unlike ACCA, experience with 924(c)(3)(B) before *Johnson* found no difficulty in its application. The ultimate inquiry is whether the language in 924(c)(3)(B) is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357–358 (1983). It is not.

We acknowledge that *Dimaya v. Lynch* rejected these distinctions as "minor" and concluded that similar language in 18 U.S.C. § 16(b), incorporated into 8 U.S.C. § 1101(a)(43)(F), suffered the same flaws as ACCA's residual clause (similar because 924(c)(3)(B) only encompasses crimes that may be prosecuted in federal court, so it is narrower than 16(b)). 803 F.3d 1110, 1120 (9th Cir. 2015). But two points suggest caution in further extending *Dimaya*. One is the Supreme Court has granted certiorari to review it. No. 15-1498, 2016 WL 3232911 (Sept. 29, 2016). The other is the opinion itself warned it "does not reach the constitutionality of applications of 18 U.S.C. § 16(b) outside of 8 U.S.C. § 1101(a)(43)(F) or cast any doubt on the constitutionality of 18 U.S.C. § 16(a)'s definition of a crime of violence." 803 F.3d at 1120 n.17. Thus by its own terms *Dimaya* does not apply in this context.[4] And although the panel majority did not explain its reasons

---

[2]     The Westlaw search conducted in the "All Federal" database was: "involves a substantial risk #that physical force against the person #or property #of another may #be used #in the course #of committing the offense" & void & vague) & DA(bef 06-26-2015.

[3]     While courts have considered whether, for example, the same language in § 16(b) covers reckless offenses, the narrow areas of disagreement have not approached the degree of conflict that ACCA's residual clause generated. "That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense." *United States v. Petrillo*, 332 U.S. 1, 5 (1947); *see also Johnson*, 135 S. Ct. at 2560 ("even clear laws produce close cases").

[4]     Several district courts nonetheless say *Dimaya* compels the conclusion that § 924(c) is void as well, and the Ninth Circuit has found that *Dimaya*'s holding was binding in determining that section 16(b), as incorporated in U.S.S.G. § 2L1.2(b)(1)(C), was

for explicitly limiting its holding to the immigration context, the fact it did signifies even the panel majority recognized potential material differences in applying 16(b) outside the immigration context. A few possibilities exist. Some courts have suggested, for example, that the analysis used to conduct a "cold record review of a prior conviction"—as required in the immigration context—is different than the inquiry that governs in the context of trial, where the district court has the "benefit of viewing the evidence as it unfolds." *United States v. Standberry*, 2015 WL 5920008, at *2 (E.D. Va. Oct. 9, 2015). Moreover, application of § 16(b) in § 1101 is broad, with immigration courts and officers conceivably needing to consider every felony criminal statute in the country—state or federal—in determining whether an offense is a crime of violence. That was the same breadth of issues confronting the Supreme Court in *Johnson* under ACCA, which required the court to look at a defendant's state or federal criminal history. In contrast, 924(c)(3) applies only to the more limited universe of crimes that may be prosecuted in the "courts of the United States." The number of crimes at issue in 924(c) then is far narrower. See, e.g., *United States v. Brown*, 58 F. Supp. 3d 115 (D.D.C. 2014). That substantially diminishes the likelihood that any defendant would not be able to discern whether a given federal offense is covered by § 924(c)(3)'s terms.[5]  Because the reasoning in *Johnson* does not undermine the language of § 924(c)(3)(B), Mendez's petition should be denied.

---

unconstitutionally vague. *United States v. Hernandez–Lara*, 817 F.3d 651, 653 (9th Cir. 2016).

[5]     The narrowed scope of the crimes that could be predicates for § 924(c)(3) also demonstrates why a defendant should have to show that the statute is unconstitutional as applied to him.  Any "indeterminacy" is necessarily cabined by the number of federal offenses contained in the code.

## III

## CONCLUSION

The court should stay this case for 60 days or until *Begay* is decided, whichever happens first. Alternatively, Mendez's motion should be dismissed or denied.

DATED: October 11, 2016       Respectfully submitted,

LAURA E. DUFFY
United States Attorney

s/Helen H. Hong
HELEN H. HONG
Assistant U.S. Attorneys

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 09-CR-710-JLS |
| v. | |
| MAURICIO MENDEZ, | CERTIFICATE OF SERVICE |
| Defendant. | |

I, the undersigned, declare under penalty of perjury that I have served the forego-ing document on the above-captioned party(ies) by:

■ electronically filing it with the U.S. District Court for the Southern District of California using its ECF System, which electronically notifies the party(ies).

□ causing the foregoing to be mailed by first class mail to the parties identified with the District Court Clerk on the ECF System.

□ causing the foregoing to be mailed by first class mail to the following non-ECF participant at the last known address, at which place there is delivery service of mail from the United States Postal Service:

Executed on October 11, 2016.

s/Helen H. Hong
HELEN H. HONG
Assistant U.S. Attorney